Counsel for Appellant, you may proceed and please watch the clock for your rebuttal time. I will. And good morning, Your Honors, and may it please the court. My name is Jim Jellison, and I represent the City of Surprise Police Officer Joseph Gruver. This is an appeal from a denial of qualified immunity at the District Court here in Arizona. Factually speaking, on November 25th, 2016, Officer Gruver, like most police officers throughout the nation, left his home, left his family to protect and serve the community in which he lives. As we all know, like most police officers, he carries a firearm because he's duty bound to investigate crimes and confront people who are dangerous and, at times, have no respect for the law or the officers who are attempting to enforce the law. On that shift, in the early morning hours of November 26th, 2016, he encountered Derek Adame, who had stolen a car, attempted to disguise the car with red paint, and affixed a stolen vehicle license plate to it. Officer Gruver investigated. Not realizing somebody was in the car, he approached and saw in fact that there was. Opened the passenger door, identified himself as a police officer, gave clear commands to Mr. Adame to keep his hands on the steering wheel where Officer Gruver could see them for the safety of everybody involved. At first, Mr. Adame acknowledged and complied, but as time went by, he disregarded the commands and he began to move his hands. He began to look around and do the things that police officers look as activity that portends some flight, some running away. Officer Gruver again jumps in and commands, keep your hands where I can see them. Adame doesn't do it. He moves his hands to the gear shift. He starts his vehicle and Gruver, Officer Gruver, enters the vehicle with the intent to maintain the status quo. Mr. Adame, instead of complying with the commands, accelerates his vehicle away. In a situation where Officer Gruver is now one knee on the passenger seat, a handgun in his hand, the passenger door open, uh, one foot outside the vehicle and dragging as it accelerates. Um, and no seatbelt on. Under those circumstances, Officer Gruver filed two shots and fatally fatally injuring Mr. Adame, whose vehicle continued to accelerate. Mr. Johnson, the trial court compared this set of facts to the clearly established right based on those facts. So what's what's the difference in the facts you're describing from the Gonzalez case, where an officer is against his will in a vehicle that's driving away? Well, Your Honor, the crux of the Gonzalez case and the problem with relying on it is it doesn't. It doesn't establish. Uh, it doesn't provide clearly established law law in the way that the U. S. Supreme Court requires it. And I disagree slightly with what the district judge did in this case. If you look closely at the district judge's qualified immunity analysis on both the first and second prongs, uh, he says basically this that I'm going to take all of these facts and I'm going to send it to the to the jury and they can decide reasonableness under the Fourth Amendment, which, by the way, is exactly what Gonzalez versus city of Anaheim did because qualified immunity wasn't wasn't an issue in the Gonzalez case. But in 2018, the U. S. Supreme Court said, Clearly, we don't do that when we talk about analyzing and passing opinions on qualified immunity. The Casella court said we're got constitutional guidelines are too remote. It does not suffice to remand the matter for trial. Um, and have a district court jury decide the issue of reasonableness. That command and Casella is not optional. It's mandatory. And the district judge did exactly what Casella says. You can't do says basically, I'm gonna put reasonableness in the hands of the jury, and I'm not going to to address head on the clearly established law problem. Um, and again, if you look at the opinion, you can see the judge show does exactly that. The other I don't I don't I don't follow that. Uh, he explained in pretty great detail what is what he was doing. I'm not quite sure what you're wrong. Judge shorter. If you go to the end of the district judge's opinion on the clearly established law prong, he ends it with the idea that that we're gonna send. We're gonna send this like the court did in in Drummond in 2003. We're gonna send this to the jury to decide reasonableness. He says that on the first prong, and he says it on the second prong as well. Um, the other problem with Gonzalez is what we see in D. C. Versus Westby and white versus Polly. Uh, in both cases, the U. S. Supreme Court said that for law to be clearly established, it has to be a case where an officer acting under similar circumstances was held. That's a quote was held to have violated the differences here. What? As I read Gonzalez, the district court seemed to say that, um, if this was, uh, that that if the car wasn't moving under our law, there was no threat and that there was a question of what was happening, except Gonzalez doesn't say that. Um, it's always it's always is and the Gonzalez court says it's less of a opinion that deals with Fourth Amendment issues. It's more the standards of summary judgment. The Gonzalez court thought that those officers were lying. There wasn't body camera footage in that case, like there is in this case where we can see exactly what's happening here. Um, yes, I would. I if the district court wrong when it says that, um, the deceit started the car, uh, after, uh, the police officer entered the vehicle and that there was no warning, uh, before using deadly force. I think Officer Gruber's testimony was that his perception was that the vehicle started after he got in. And Officer McGonigal's perception is that the vehicle was moving in any event, but it wasn't moving in any event. And actually, we could see that on the video that it doesn't. Those wheels don't start spinning until Officer Gruber is in the precarious position that he finds himself. And I want to talk about Gonzalez because obviously that's the centerpiece of this. But Gonzalez on multiple occasions basically says the jury can do anything here. The jury can find for the officers. The jury can find against the officers. We're not going to decide on this record. Um, the issue in Gonzalez wasn't wasn't really the determinative issue wasn't really the speed of the vehicle. The determinative issue was was the danger posed by the way the vehicle was being used. And there are some distinct factual differences between here and Gonzalez, particularly when we talk about the placement of Officer Gruber in this in this vehicle with the seatbelt gun in hand. He's being taken away against his will. And if we look at the video, if we look at the video, this is exactly that tense, difficult, rapidly involving situation where an officer has very little time to act. But I do want to say one thing about Gonzalez on the point that it not only doesn't hold that there's a Fourth Amendment violation, certainly the dissent holds that there's no Fourth Amendment violation. But but the case also makes clear that speed of the vehicle is not determinative. And I would imagine, by the way, that if the issue was what was the trajectory of the vehicle? In other words, they had an onboard computer. We knew it was going 35 miles per hour. But the officer said the vehicle was coming towards us. But there was tire marks that suggested the vehicle was going away from them. I would imagine that the majority in Gonzalez wouldn't have cared about speed anymore. They would have cared about trajectory because at the heart of it, the issue isn't this fact or that fact. It's the moving when he got into the car. And according to, as I understand, the Supreme Court, if we have a video, we're supposed to watch it and that it's controlling. And it appeared that the car was not moving when the when he was shot. Oh, I disagree with that. It was moving slowly and it speeded up after he was shot. I can only tell you that's how I looked at it. If there are other ways of interpreting it. Well, my view of my view of the video is that it accelerates, accelerates briskly. But there's no question that the shooting occurs very early on, and there's no question that the shooting occurs before it gets to 42 miles per hour. But, you know, the Gonzalez case after it talks about after the majority talks about the speed of the minivan that Officer Wyatt was in, the court says this. It says other factors identified in Graham would support a verdict in favor of the defendants here as well. By the time Wyatt called the trigger, the crimes that issue were relatively severe, and Gonzalez was plainly resisting arrest for attempting to evade arrest by flight. So even the Gonzalez majority doesn't say that when this jury in Gonzalez hears this case that if they determined that that Gonzalez's vehicle is going slow, then then there's a Fourth Amendment violation. But if it's going fast, then there's no Fourth Amendment violation. But, you know, in addition to the concern that the officers were lying, but the law is that there has to be a threat. Now you're lying law and slow and fast fits into that, uh, into that formulation, does it not? Well, I can. I'm hard pressed to imagine a threat that is as dire for a police officer is being stuck in a moving car against his will, being taken by a criminal with the passenger door open and no seatbelt on. And I think in the Casella case, the Supreme Court, when faced with a different scenario, but a lot of the same arguments that would apply here, you know, recognize that Miss Casella has a knife. She's 6 ft away from Miss Chadwick. There's a fence in between them. She can close that space very, very quickly. And so with a chain link fence in between the officers, it was okay. It did not violate the Fourth Amendment for them to shoot. What was Officer Gruber supposed to do here? Um, jump out. Is there any clearly established law that requires him to do that? In other words, a case that holds that he's required to do that? Or is he supposed to do what the district court suggests? Stay there, have a chat, maybe holster his hand gun and try to use a taser. By that point, he's going 42 miles per hour, and he's involved in the in what could be a fatal car crash for Officer Gruber. There's no clearly established law that requires him to do that. And I had asked this court to at Wilkinson, which held that there was no Fourth Amendment violation where a car was driven slowly but in a way that was dangerous. And the cases that we cite in our opening brief on pages 27 through 36, where many other circuits have decided that when a car is being operated dangerously, even if it's slowly, officers could use deadly force. I see I have about a minute 40, and I'd like to reserve that, please. Okay, thank you very much, Mr. Jellison. Mr. Valenzuela, good morning to you. Good morning, Your Honors. Eric Valenzuela on behalf of the appellee slash plaintiff Maria Adami and minor CA. First, I would like to start off by thanking Your Honors for hearing this matter in light of everything that's going on across the country right now. Thank you. Now, the lower court's decision denying qualified immunity should be affirmed for at least four reasons. Reason number one, the lower court directly found that there were disputed issues of material fact. And those disputed issues of material fact affect both whether there was a constitutional violation and whether that right was clearly established at the time of the shooting. After all, you first need to determine the facts before you can apply those facts to the clearly established law. Now, reason number two, when you assume plaintiff's facts to be true, which is the proper standard for purposes of this appeal, Officer Groover's use of deadly force was excessive. Now, I'd like to talk about those facts really quick. Under plaintiff's facts, when you assume them to be true, you have a suspect in a vehicle with stolen plates. You have an individual who the officers described as displaying signs that he might flee and might attempt to drive off. Officer Groover enters the vehicle after the driver's side of the vehicle, was never supposed to go to the driver's side of the vehicle, remains on the sidewalk only a few feet behind Officer Groover, and is never in danger of being ran over. Now, the next fact, decedent's car only traveled approximately three feet, approximately five miles an hour prior to the shooting, and he was shot within a second or two from when the car started to move forward. He was shot without ever giving a verbal warning that deadly heat and tans were visible at the time of the shooting, and he never did this reaching motion as if he was reaching for some type of weapon. Mr. Valenzuela, the district court determined that this case was on all fours with Gonzalez. So, to affirm the denial of qualified immunity, do we need to agree on that point? Well, first, I would submit to you, Your Honor, after the Supreme Court precedent and Ninth Circuit precedent, you don't need the case factually on all fours in order to find that a right was clearly established. But here, the district court was correct in finding that this case was factually on all fours with the Gonzalez case, and those are their words, not mine. So, I would submit to you first, you don't need a case on all fours, but here we actually have. Mr. Valenzuela, would you agree that the officer was in harm's way, that he was a threat of serious bodily injury when the car started moving with him half in and half out? Isn't that the key difference with Gonzalez? I would submit to you, Your Honor, there was a potential threat, but it wasn't a threat. I rose to the level of an immediate threat of death with serious bodily injury. But what does the officer have to do to make that decision in those seconds as the car is leaving? He's half in, half out. Isn't the idea of qualified immunity to protect him when he has to make a split-second decision, when it's certainly possible he's facing a serious bodily injury? Well, Your Honor, I would submit to you he could have gotten outside of that vehicle just as easily without fire. Officer Gruber could have exited out of that vehicle while it was still traveling at a slow rate of speed, having only moved a few feet, without fatally shooting the decedent. He could have easily... But in watching the video, his right foot is hopping along the ground as the car is moving. Correct, Your Honor. What factually leads you to believe he could have safely exited the vehicle? The fact that he was able to exit the vehicle after shooting the decedent without sustaining any physical injury, I would submit to you he could have just as easily exited out of that vehicle without using that vehicle. It would be on those... And I would also like to address that if the officer enters a vehicle where he believes that the suspect might attempt to flee, he cannot then use that as a pretext or an excuse to use deadly force against him. He shouldn't have gotten the vehicle to begin with if he thinks the suspect is going to drive off with it, especially after he's already started the vehicle and after he's displayed signs that he might attempt to flee or drive off, as the officers have described. Now, going back to just some of the facts, I would like to emphasize that the decedent immediately lost control and became incapacitated after he was shot. And you could see that from the video. As soon as he's shot, he hunches over to the right side onto the center console and he loses control of the vehicle. Right after that, Gruber voluntarily exits out of the vehicle without sustaining any kind of physical injury that would be against the fall of the vehicle. He crashes into the driveway of a nearby home, which is why officers are trained, you don't shoot drivers of vehicles, so they're going to lose control and crash their vehicle. And then shortly after, this I think is very important. Shortly after the vehicle crashes into the driveway of a nearby home, one of the responding officers, he asked Gruber, did he have a gun? And Gruber's response is, no, he took off with me and the car in it. And the reason I think that is important because shortly thereafter, when Gruber gives his In part, one of the reasons that I shot is because I believe he was reaching for a weapon. So I think that's important to point out. Now, reason number three, the video evidence supports the plaintiff's version of the shooting and contradicts the officer's reason. I guess it seems to me the nub of this is that in Gonzales, the officer was fully in the vehicle with the door closed. And here, Officer Gruber was in this strange position where his left knee, he was reaching into the car, his left knee was on the seat, his right leg was outside the car, essentially dragging on the street, and then the car took off. And that does, I guess the question for you is, doesn't that present quite a different situation than the Gonzales case in terms of telling us that what Officer Gruber should have done in that Well, Your Honor, I think Gonzales focused more on the speed and distance that the car had traveled as to whether he was in the car with it closed or not. I think that was more the crux, the determination in the Gonzales case, as opposed to how he was seated in the vehicle. Gonzales case put a lot of emphasis on the speed and the distance that the car had traveled because that would show the immediate threat posed to the officer. You're never going to get a I just, I just wondered, do you agree that the car speeded up before he was shot? No, Your Honor. In my review of the evidence, first of all, Officer McGonigal describes the shooting as instantaneous from when the car starts to move forward. And if you look at the video, it happens within a second or so. And that video, you can see the wheels don't start to skid or peel out. It officer shoots them within a second or two, and then the decedent immediately loses control of the vehicle. Appellants argue in their briefing that the decedent deliberately made this right turn and deliberately accelerated the vehicle until four seconds. You look at that video, you see him lose control and become incapacitated almost immediately after that first shot. Right. But I think based on the video, it is also the case that once Officer Gruver pulled the trigger, the vehicle had already been moving. In other words, he did not fire the shots until the vehicle began to leave the spot. Is that right? Correct, Your Honor. The vehicle had just barely started moving approximately one second after, uh, until Officer Gruver fired his shot. And when he did fire that shot, I submit to you in the video supports is that car was traveling a relatively slow rate of speed, approximately five miles an hour. The vehicle had only traveled approximately three feet, and you could see this by looking at the different visual cues in the video. If you look at the video, you're gonna see a little driveway that answers not into a home. There's like a little driveway that answers into a grass area. You're gonna see this wooden pole. I don't know if there's a light or electrical wires on there. Those are only a few feet in front of the car while it's parked, and you could see from the shooting that's approximately where the vehicle is when fired. If you look at that video, you're not gonna see a vehicle that tried and traveled a significant distance or at a high rate of speed. When the shooting occurred, you're gonna see in that video, he shot him almost instantaneously, as McGonigal described, from when the vehicle first started to drive off within approximately a second or so when it had only traveled approximately three feet at five miles an hour. I think, though, maybe you could respond to this. The point on the other side, your friend on the other side's argument, as I understood it, was the distinction or the issue of how fast the vehicle was traveling is not pertinent here under the Qualified Immunity Analysis because of the circumstance that the officer was half in, half out of the vehicle. In other words, in Gonzales, that did make a big difference because the officer was fully inside the vehicle, and a faster vehicle could present more danger than a slower moving one. Here, the officer is not just sitting there. He's half in and half out. And so I think the argument on the other side is, at that point, the speed of the vehicle, once we know it's moving, the exact speed isn't as central as it was in Gonzales, and that's the difference between the two cases. It's a bit to your honor that how fast the vehicle was traveling is absolutely a significant factor to take into consideration, both in determining the threat posed to the officer and whether that right was clearly established. Like I said, in the Gonzales case, there was a heavy focus on the distance and speed of the vehicle. They do mention that the car door had closed and that he was seated in the passenger seat, but more of the focus in the Gonzales matter seems to be on the distance and speed that the car had traveled and what kind of threat that would have posed to the That's because in Gonzales, the speed, the distance wasn't indicative of a threat, a bodily injury to the officer. I mean, certainly an officer would be afraid being an unwitting passenger in a car that he doesn't know where it's going. But here we have somebody who's half in, half out. And isn't the issue bodily harm and not necessarily speed and distance? Correct, your honor. The issue is what kind of you can't honestly say that if you're lying across the seat of car with your feet out your body in, you're not going to have some concern of bodily harm once that car starts moving. There is some potential threat, your honor. I'm not going to say that there is not. It doesn't rise to the threat of an immediate threat of death or serious bodily. It does not. I would submit to your honor at a car that has barely started to move forward only a few feet at a slow rate of speed does not pose an immediate threat of death or serious bodily injury. And I always say in viewing the video, the majority of the officer's body is inside of that vehicle. It's not half in and half out. I'm not going to dispute that part of the leg is not outside the vehicle. But this isn't a case where you have half of the body in and half body out. But I do concede that you do have a leg outside of the vehicle. But I would say to you, the fact that the door was closed in Gonzalez doesn't make it so factually distinguishable from the instant case that it wouldn't apply. Does that does it justify the shooting? Because half in and half out of the fire is moving slowly. I would have thought you would say that he should have gotten out. Absolutely, your honor. There's no reason he couldn't have got out of that vehicle without firing his weapon. I submit to you probably would have even been safer for him to get out without probably. So absolutely. Oh, I'm sorry. I want to address one argument if I may. There's been this argument by the appellant that well, the Gonzales court did not find that officer Gruber strike that the Gonzales court did not find that the officer violated the Fourth Amendment or that it did not find that the officer was liable for violating the Fourth Amendment. I would submit to you when they deny summary judgment with the Fourth Amendment claim, they don't say, I hold that the officer violated the Fourth Amendment. I hold that the officer is liable. No, they say, assuming these set of facts to be true, a jury could find that the use of force was excessive and therefore the officer is not entitled to summary judgment as a matter of law. And that's what routinely happened. They don't find, oh, I hear by fine violated the fourth. And that's precisely what was found in the Gonzalez case. And that's assuming these set of facts to be true, a jury could find that the use of force was excessive and therefore you're not entitled to summary judgment for qualified immunity as a matter of law. And the Gonzalez case was factually specific enough to establish that that right was clearly established and put Gruber on notice that his use of deadly force would be excessive and that he wouldn't be entitled to judgment as a matter of law under these circumstances.  Gonzalez, this is a case that needs to be decided by a jury. He is entitled to judgment as a matter. That's all I have on the list. If the court has any further questions. Judge Schroeder, Judge McShane, any further questions? Okay, thank you Mr. Valenzuela. Thank you, Your Honor. Mr. Jellison. Your Honor, is the only thing that the Gonzalez court would tell an officer who was reading it or educated on it would be that a jury might find a violation and a jury might not find a violation based on all the facts. That's not clearly established law. But in Gonzalez, faced with no body camera footage and officers that the court was concerned were flat-out lying about their perception of the threat, the Gonzalez court painted a possible picture where Officer Wyatt's just sitting comfortably in the passenger seat with the door closed, meandering at three, four, five miles per hour. That possibility doesn't exist in this case based on the body camera footage that we're seeing. Officer Groover was faced with an imminent threat and my colleague talks about immediate threat. The standard is imminent threat. It doesn't have to manifest itself. There's no clearly established law that says that Officer Groover has to jump out of that vehicle with Mr. Adami in control of it before he can use deadly force. And to say that that's a safe alternative, I haven't seen that come out in clearly established law from any court. To say that a decided decision that doesn't meet all fours isn't required flies in the face of the Supreme Court's decision in Emmons and how the Ninth Circuit dealt with Emmons when it was remanded. When you look at the factors in this case and you look at cases like Casella, there was enough warning, the conduct's not violent of clearly established law, and this is an officer who's entitled to qualified immunity. Okay, thank you Mr. Johnson and I'll ask my colleagues if they have any further questions before we we let you go. Okay, thank you very much counsel on we appreciate your argument and the cases submitted. Thank you.
judges: Schroeder, Bress, McShane